**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

June 30, 2023

David H. Holloway, Esquire
Shlansky Law Group LLP
1504 North Broom Street
Wilmington, Delaware 19806

Jody C. Barillare, Esquire
Morgan Lewis & Bockius LLP
1202 North Market Street
Wilmington, Delaware 19801

RE:  *Edward Deane, et al. v. Robert Maginn, Jr.*,
     C.A. No. 2017-0346-LWW

Dear Counsel:

I write to resolve the defendant's Motion for Reargument Regarding the Court's Order Appointing Special Counsel (the "Motion").[1] The Motion concerns my appointment of Special Counsel to represent the interests of absent members of New Media Investors II-B, LLC ("New Media II-B") who may be entitled to a pro rata recovery of damages. For the reasons explained below, the Motion is denied.

---

[1] Mot. for Reargument Regarding the Court's Order Appointing Special Counsel (Dkt. 348) ("Mot.").

## I.    BACKGROUND

The procedural history of this case spans many years and is documented in my prior decisions.[2]  It culminated in a three-day trial in March 2022.  On November 1, I issued a post-trial memorandum opinion finding that the defendant had breached his duty of loyalty by usurping a corporate opportunity from New Media II-B.[3]  I calculated New Media II-B's damages to be $25,451,992.  Given the "unique circumstances of this case and the nature of New Media II-B," I determined in the exercise of my discretion that a pro rata recovery by New Media II-B's investors would be equitable.[4]  Among other considerations, I reasoned that a recovery by New Media II-B would wrongly benefit the defendant.[5]

Although a pro rata distribution seems simple in concept, it soon proved complex in execution.  At some point, New Media II-B had about 88 members

[2] *See Deane v. Maginn*, 2022 WL 624415 (Del. Ch. Mar. 2, 2022); *Deane v. Maginn (Maginn II)*, 2022 WL 16557974 (Del. Ch. Nov. 1, 2022).

[3] *See Maginn II*, 2022 WL 16557974, at *31.

[4] *Id.* at *31; *see In re Happy Child World, Inc.*, 2020 WL 5793156, at *2 (Del. Ch. Sept. 29, 2020) ("As a court of equity, this Court . . . would be within its authority to fashion [a direct recovery for a derivative claim] if it did so with care.").

[5] *Maginn II*, 2022 WL 16557974, at *29-30; *see also In re El Paso Pipeline P'rs, L.P. Deriv. Litig.*, 132 A.3d 67, 75 (Del. Ch. 2015) (observing that an investor-level recovery on a derivative claim may be appropriate where "an entity-level recovery would benefit 'guilty' stockholders" or where "the entity is no longer an independent going concern, such that channeling the recovery through the corporation is no longer feasible or a pro rata recovery is more efficient"), *rev'd on other grounds sub nom. El Paso Pipeline GP Co., LLC v. Brinckerhoff*, 152 A.3d 1248 (Del. 2016).

around the world. It is unclear how many members remain today (and where they are located).[6] As a further complication, in 2013, the defendant sent letters to New Media II-B members that enclosed a "Payment Acknowledgement and Release" agreement and a redemption payment described as a "final check[]." [7] The agreement stated that acceptance of the redemption payment would represent a repurchase of a member's equity and terminate any membership interest in New Media II-B. The agreement also included a broad release of claims. Some members signed agreements and cashed their checks.[8] Others, including the plaintiffs, did not.[9] Whether the former group is entitled to a distribution of damages remains unresolved.

Given these issues, I asked the parties for proposals on next steps in distributing a recovery to members. This process, too, has presented challenges. The plaintiffs suggested that I appoint a receiver to "identify and locate" potential members of New Media II-B and "to resolve possible uncertain or disputed claims of membership."[10] The defendant raised many objections but few solutions. For

---

[6] *Maginn II*, 2022 WL 16557974, at *30 (noting that the evidence "indicates that there may be somewhere between two and 85 remaining members of New Media II-B").

[7] *Id.* at *6.

[8] *Id.*

[9] *Id.*

[10] Dkt. 331 at 2.

example, he argued that the plaintiffs are poor representatives given their interest in a larger recovery while insisting that I cannot properly "adjudicate property interests of absent parties."[11]

During a February 15, 2023 hearing, I asked the defendant's counsel why the other members needed to be "present" to receive a distribution of damages recovered by an entity.[12]  The defendant's counsel responded:

> [W]hat you are envisioning is determining who are members based upon a release that would be, I presume, litigated by the people who would, I presume, if there's money at stake, claim that they have an interest in it and that the release is invalid.  If they're not present, then I don't know how you do that.[13]

I then asked whether counsel "believe[d] that the validity of the release is a threshold issue that would need to be taken up as a matter of law before we determine who the members of the entity are?"[14]  Counsel responded: "If we're going to go down that route, then I don't see how you can do it without . . . number one, determining the validity of the release.  That would be required."[15]

---

[11] Dkt. 334 at 2.

[12] Dkt. 343 at 14.

[13] *Id.* at 14-15.

[14] *Id.* at 15.

[15] *Id.*

I took the defendant's concerns—which I believe are valid—seriously and considered whether and how to resolve the issue of the release. On April 27, I informed the parties that I had decided to appoint Special Counsel to represent the interests of the absent New Media II-B members (or former members).[16] The Special Counsel would address whether the absent members who signed releases and accepted redemption payments might still be entitled to a pro rata distribution of damages.

The defendant dissented again.[17] His seven subsequent objections included a request that the Special Counsel conduct a broad conflicts check and that I advise on how the Special Counsel would be compensated. He also argued that the appointment of a Special Counsel "underscores the reasons the case should have been dismissed pursuant to Rule 19 before trial."[18]

On May 15, I entered an Order Appointing Special Counsel (the "Order") and sent a letter to counsel addressing the defendant's concerns.[19] My letter and Order described the role of Special Counsel, explained the manner of her compensation,

---

[16] Dkt. 344.

[17] Dkt. 345.

[18] *Id.* at 4.

[19] Dkts. 346-47.

and confirmed that she had cleared conflicts. As to the defendant's Rule 19

arguments, I reiterated that the defendant had unsuccessfully raised them in the past:

> As the party relying on Rule 19, the defendant had the burden to show there exist persons that are necessary or indispensable to the action. At the summary judgment stage, I held that the defendant fell "well short" of meeting this burden because he cited only to documents from 2013 and an "undated and uncontextualized" spreadsheet. At trial, no additional evidence was presented. After trial, the defendant opted not to brief his Rule 19 arguments, thereby waiving them.[20]

I also clarified that the defendant was not entitled to "relaunch his Rule 19 arguments

at this stage in the case" or to "reopen the trial record with 'evidence that bears on

his own liability.'"[21]

Now, the defendant has filed this Motion. He argues that "there is no need to

appoint a Special Counsel" because "the Court denied the only claim in this case

that raised the issue as to whether any Non-Party Members' interests in [New Media

II-B] have been extinguished by the [Payment Acknowledgement and] Release."[22]

Because that claim was denied, he contends that the court now lacks subject matter

---

[20] Dkt. 346 at 5 (citations omitted).

[21] *Id.* at 6. As to the defendant's Rule 23.1 argument, it is stale. In any event, the appointment of Special Counsel directly addresses any purported conflict of interest between the plaintiffs and other current or former members of New Media II-B.

[22] Mot. ¶ 2.

jurisdiction.[23] He suggests that rather than appoint Special Counsel to represent the absent members, I should appoint a claims administrator.[24]

## II. ANALYSIS

Court of Chancery Rule 59(f) governs motions for reargument.[25] A motion for reargument will be denied "unless the Court has overlooked a decision or principle of law that would have a controlling effect or the Court has misapprehended the law or the facts so that the outcome of the decision would be affected."[26] Reargument motions "may not rehash old arguments or invent new ones."[27]

The defendant has not identified any principle of law or any fact that I overlooked or misapprehended in appointing Special Counsel. Rather, he either raises arguments that have no place at the remedial stage or critiques the manner of recovery after trial. I am no longer resolving claims or determining what remedy is

---

[23] Dkt. 350 at 5.

[24] Mot. ¶ 3.

[25] Ct. Ch. R. 59(f).

[26] *Stein v. Orloff*, 1985 WL 21136, at *2 (Del. Ch. Sept. 26, 1985).

[27] *Quantlab Grp. GP, LLC v. Eames*, 2018 WL 5778445, at *1 (Del. Ch. Nov. 2, 2018); *see also Wong v. USES Hldg. Corp.*, 2016 WL 1436594, at *1 (Del. Ch. Apr. 5, 2016) ("Where the motion merely rehashes arguments already made by the parties and considered by the Court when reaching the decision from which reargument is sought, the motion must be denied." (citing *Lewis v. Aronson*, 1985 WL 21141, at *2 (Del. Ch. June 7, 1985))).

appropriate. The defendant's arguments on the merits, including whether necessary parties were absent, were resolved in my summary judgment and post-trial decisions. I do not lack subject matter jurisdiction to implement the remedy that I have deemed appropriate.[28] And I concluded that appointing a claims administrator was not a viable option given (1) the lingering questions about which current or former members are entitled to damages and (2) the lack of evidence on where those members are located.[29] I am solely determining which members are legally entitled to share in a recovery.

The defendant further argues that my Order appointing the Special Counsel did not address the payment of fees if the judgment were reversed on appeal. Pursuant to the Order, the Special Counsel will be compensated from the total damages awarded in this action.[30] It is not apparent to me why the Order should have addressed hypotheticals—much less how this creates grounds for reargument.[31]

---

[28] This jurisdictional argument repackages arguments previously raised about whether my finding that the plaintiffs did not prevail on their declaratory judgment claim affects the implementation of a remedy for the corporate opportunity claim.

[29] Again, these issues were raised by the defendant as potential roadblocks to a pro rata distribution of damages. *See, e.g.*, Dkt. 334 at 5-7.

[30] Dkt. 347 ¶ 8.

[31] *See Heineman v. Datapoint Corp.*, 1991 WL 165303, at *1 (Del. Ch. Aug. 20, 1991) (denying a motion for reargument where the issues were unripe).

If the defendant prevails on appeal, any issues regarding the Special Counsel's compensation will be resolved in due course.

## III. CONCLUSION

For these reasons, the Motion is denied. The parties are to proceed with briefing the validity of the Payment Acknowledgement and Release as a matter of law, as I previously ordered. I remain committed to bringing this long-pending matter to an efficient and equitable close.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor